IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ERNEST MORRIS                                    :
        Petitioner,

                                      CIVIL ACTION
    v.                                              :          NO. 15-1352

COMMONWEALTH OF
PENNSYLVANIA                                   :
        Respondent.

**<u>MEMORANDUM</u>**

**Jones, II    J.**                                                                   **January 24, 2017**

## I.    Introduction

Petitioner Ernest Morris comes before this Court seeking habeas relief from his State Court conviction on First Degree Murder and other related charges.  Pursuant to Local Civil Rule 72.1.IV(c), the matter was referred to United States Magistrate Judge Richard A. Lloret for a Report and Recommendation ("R&R").   Judge Lloret issued an R&R denying Petitioner's request for relief and Petitioner filed objections thereto, which are presently pending before this Court.  For the reasons set forth below, Petitioner's objections shall be overruled.

## II.    Background

On May 24, 2005, Petitioner was charged with first, second, and third degree murder, murder of an unborn child, robbery, and other related offenses arising from the deaths of Shawne Mims, Jennifer Pennington and Ms. Pennington's unborn child. (ECF Nos. 9-208, 9-210.)[1]  On August 12, 2005, the Commonwealth filed a Notice of Intent to Seek Death Penalty.  (ECF No 9-

---

[1]   Two co-defendants were also implicated: Maurice Jones and Harold Murray.

209.)  Petitioner's first trial commenced on January 3, 2006 in the Montgomery County Court of Common Pleas and was presided over by the Honorable Richard J. Hodgson. (Trial Tr. 1, Jan. 3, 2006, ECF No. 9-189.)  After Judge Hodgson determined that then Assistant District Attorney Kevin Steele committed a *Bruton* violation during his opening statement, the court granted the defense's request for mistrial.  (Trial Tr. 33:25-34:2, Jan. 13, 2006, ECF No. 9-190.)  After unsuccessfully arguing that double jeopardy precluded retrial, Petitioner, along with his co-defendants, appealed to the Pennsylvania Superior Court.  (Trial Tr. 3:18-22, Jan. 17, 2006, ECF No. 9-191; ECF No. 9-195.)

On January 7, 2008, the Superior Court denied the appeal and remanded the case back to the trial court.  (*Commonwealth v. Murray, et al.*, No. 5182-05 (Pa. Super. 2008), ECF No. 9-177.)  Although Co-defendants Jones and Murray proceeded to seek allocatur from the Pennsylvania Supreme Court, Petitioner's trial counsel, Mr. Todd Edward Henry, did not do so but instead, sought leave to withdraw from the case.  (ECF No. 9-178.)  Twelve days later, Petitioner's family retained Gregory J. Pagano, Esquire, for purposes of filing an appeal on behalf of Petitioner.  (ECF No. 9-174.)  After discovering the time within which to seek allocatur had lapsed, Attorney Pagano filed a *nunc pro tunc* petition for allowance of appeal with the Supreme Court the next day.  (Trial Tr., 5:16-20, April 29, 2008, ECF No. 9-167.)  Following a discussion with Petitioner on March 14, 2008, Mr. Pagano withdrew the petition.  (ECF No. 9-176.)

After ordering that trial would commence on May 1, 2008, the matter was re-assigned from Judge Hodgson to the Honorable Steven T. O'Neill.  (ECF No. 9-175.)  On April 29, 2008, Judge O'Neill held a pre-trial conference and with the agreement of Petitioner, granted Mr. Henry's previously-filed motion to Petition for Withdrawal.  (ECF No. 9-167 at 59:25-60:6; ECF

No. 9-171.)  After engaging in a colloquy with the court regarding whether Petitioner wanted to proceed to trial or re-file a *nunc pro tunc* petition for allowance of appeal with the Pennsylvania Supreme Court, Petitioner agreed to have Mr. Pagano re-file the petition.  (ECF No. 9-167 at 67:4-68:2.)  Mr. Pagano did so and on May 24, 2009, the Pennsylvania Supreme Court denied the petition.  (ECF No. 9-152.)  Mr. Pagano was permitted to withdraw from the case and on June 1, 2009 and the court appointed John I. McMahon, Jr., Esquire, to serve as trial counsel for Petitioner.  (ECF No. 9-151 at 6:4-18; ECF No. 9-157.)

On June 4, 2009, Judge O'Neill scheduled the trial for August 24, 2009.  (ECF No. 9-150.)  The Commonwealth filed an Amended Notice of Intent to Seek Death Penalty on June 12, 2009 and on August 21, 2009, Mr. McMahon filed a Motion to Dismiss on the grounds of an alleged Speedy Trial violation. (ECF Nos. 9-147, 9-154.)  Judge O'Neill denied the motion and Petitioner's trial began three weeks later.  (ECF No. 9-124; ECF No. 9-135.)

On October 14, 2009, Petitioner was convicted of criminal conspiracy, first degree murder, second degree murder, first degree murder of an unborn child, kidnapping, burglary, false imprisonment, possession of an instrument of crime, and possession of a weapon.  (Trial Tr. 15:12-18:25, Oct. 14, 2009, ECF No. 9-109.)  During the penalty phase, the jury was unable to reach unanimous decision on whether or not to impose a sentence of death, therefore Petitioner was ultimately sentenced by Judge O'Neill to three (3) consecutive terms of life imprisonment without parole, plus a consecutive term of 43 to 90 years.  (Sentencing 4:19-22, 52:6-54:22, Dec. 18, 2009, ECF No. 9-108.)

On January 19, 2010, Petitioner appealed his conviction , claiming the trial court erred in denying Petitioner's Speedy Trial motion.  (ECF Nos. 9-110, 9-116.)  On November 1, 2010, the

Superior Court issued an opinion affirming judgment.  (*Commonwealth v. Morris*, No. 243 EDA 2010 (Pa. Super. Nov. 1, 2010), ECF No. 9-99.)

On December 30, 2010, Petitioner filed a *pro se* Petition under Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.* ("PCRA"), seeking the reinstatement of his direct appeal rights so that he could file a Petition For Allowance of Appeal with the Supreme Court of Pennsylvania.  (ECF No. 9-97.)  After the appointment of new counsel, the trial court granted the requested relief.  (ECF No. 9-74.)  On December 29, 2011, the Supreme Court denied allocatur.  (ECF No. 9-65.)

On July 11, 2012, Petitioner filed a second PCRA petition.  (ECF No. 9-66.)  The PCRA court appointed Attorney Karen Lee DeMerlis to represent Petitioner throughout the process.  (ECF No. 9-56.)  On May 9, 2013, Ms. DeMerlis filed a No-Merit brief pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) and sought leave to withdraw.  (ECF No. 9-41.)  On July 21, 2013, the PCRA court granted Ms. DeMerlis' request to withdraw as counsel and issued a Notice of Intent to Dismiss Petitioner's second PCRA petition without an evidentiary hearing, pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure.  (ECF No. 9-31.)  Petitioner filed objections and on August 20, 2013, the PCRA court dismissed his second PCRA petition without an evidentiary hearing.  (ECF No. 9-28.)  Petitioner appealed this ruling, raising thirty-eight (38) issues for consideration by the Superior Court.  (ECF No. 9-19.)

The issues presented on collateral appeal  included prosecutorial misconduct, ineffective assistance of counsel, improper search and seizure of cell phone evidence, Mr. Pagano's lack of death penalty qualification, and various allegations of Constitutional rights violations.

(*Commonwealth v. Morris*, No. 2564 EDA 2013, 6–11 (Pa. Super. Oct. 10, 2014) ECF No. 9-3 at

6-11.)

Upon review, the Pennsylvania Superior Court held that most of the thirty-eight issues

raised by Petitioner had not been preserved for appellate review, noting:

> A prior panel of this Court decided [the issues of prosecutorial misconduct
> and double jeopardy] on appeal in a memorandum decision dated
> January 7, 2008, concluding that the trial court did not err in denying
> [Petitioner's] motion to bar re-trial on double jeopardy grounds.
> *Commonwealth v. Jones, Morris & Murray*, 138, 165, 211 EDA 2006, at
> 17 (Pa. Super. January 7, 2008) (unpublished memorandum).  In addition,
> we find that [most issues raised by Petitioner] are all waived, as they could
> have been (but were not) raised on direct appeal, and [Petitioner] has not
> alleged that appointed counsel's decision to forego these issues on direct
> appeal "could not have been the result of any rational, strategic or tactical
> decision by counsel." 42 Pa.C.S.A. § 9543(a)(4).

(ECF No. 9-3 at 12-13) (footnotes omitted).

However, the appellate court did in fact systematically evaluate each ineffectiveness

claim leveled by Petitioner and found each to be lacking merit.  (ECF No. 9-3 at 13-24.)

Because Petitioner could identify no meritorious issue which his attorney failed to pursue on

direct appeal, said court concluded there were no legitimate ineffective assistance of counsel

claims and affirmed the Order of the PCRA court.  (ECF No. 9-3 at 23-24.)  Petitioner sought

allocator, which was denied by the Pennsylvania Supreme Court on February 4, 2015.  (ECF No.

9-2.)

On March 18, 2015, Petitioner filed the instant habeas corpus petition.  (ECF No. 1-1.)

The matter was referred to United States Magistrate Judge Richard A Lloret for a Report and

Recommendation ("R&R"), which he issued on June 29, 2016.  (ECF No. 23.) Petitioner filed

Objections thereto and the Commonwealth has responded to same.  (ECF Nos. 25-2, 32.)

Petitioner subsequently filed a Traverse and Notice to the court regarding supplemental authority.  (ECF Nos. 33, 34.)  The matter is now ripe for this Court's consideration.

### III.   Standards of Review

#### A.   Objections to Report and Recommendation

When objections are filed to the R&R of a Magistrate Judge, the District Court must review *de novo* those portions of the R&R to which objection is made.  28 U.S.C. § 636(b)(1).  If there are no objections to the R&R, or when review those portions of the R&R to which no objections are directed, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b), advisory committee notes; *see also Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998) ("In the absence of a timely objection… this Court will review [the Magistrate's] Report and Recommendation for 'clear error.'" (citations omitted).

#### B.   Exhaustion and Procedural Default

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241-66 ("AEDPA") deals with the right of all persons in state custody, or in federal custody, to file a petition in a federal court seeking the issuance of a writ of habeas corpus.  In the context of a prisoner in state custody, if such a writ of habeas corpus is issued by a federal court, the prisoner will be released from such state custody on the grounds that certain rights accruing to that prisoner pursuant to the United States Constitution have been violated; habeas corpus motions pursuant to AEDPA are the only possible means of obtaining this type of relief from state custody.  *Benchoff v. Colleran*, 404 F.3d 812 (3d Cir. 2005); *Coady v. Vaughn*, 251 F.3d 480 (3d Cir. 2001).

6

By means of the AEDPA, Congress also created a series of intentionally restrictive gate-keeping conditions which must be satisfied in order for a prisoner to prevail on a habeas petition. The strict AEDPA gate-keeping procedures were enacted by Congress in order to support the policy of creating finality with respect to state and federal criminal prosecutions.  One such gate-keeping procedure is the requirement of exhaustion.  "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the state…." 28 U.S.C. 2254(b)(1); *see also Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) ("[A] district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a State Court judgment unless the petitioner first has exhausted his available remedies in State Court.") (citing 28 U.S.C. § 2254(b)(1)).  Petitioner must have "fairly presented" the federal habeas claims to the State Courts.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Evans v. Court of Common Pleas, Delaware County, Penn.*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted).  "To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the State Courts in a manner that puts them on notice that a federal claim is being asserted."  *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  A petitioner in Pennsylvania must appeal such claims to the Pennsylvania Superior Court.  *Whitney v. Horn*, 280 F.3d 240, 250 n.10 (3d Cir. 2002).  Petitioner carries the burden of proving exhaustion.  *Coady*, 251 F.3d at 488 (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

Where a claim was not exhausted in State Court, it is said to be procedurally defaulted. To bring a procedurally defaulted claim in federal proceedings, Petitioner must demonstrate either: (a) cause for the default and actual prejudice arising from the alleged violation of federal law; or that (b) failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  To establish the "cause" requirement, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)).  To establish "prejudice," petitioner must "prove 'not merely that the errors at… trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Id.* at 193 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Second, to establish a fundamental miscarriage of justice, Petitioner must demonstrate actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 324-32 (1995).

       **C.**     **Merits Review**

      Where Petitioner's claims were adjudicated on the merits in State Court, the AEDPA deference standard applies to this Court's review of the merits determination.  *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012).  The AEDPA limits federal habeas review of State Court judgments.  *Werts*, 228 F.3d at 195.  A petition for habeas corpus may only be granted if: (1) the State Court's adjudication of the claim "resulted in a decision contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or, if (2) the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  When a claim has been adjudicated on the merits in State Court, federal habeas review is limited to the record before the State Court.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398-99 (2011).

### D.       Ineffective Assistance of Counsel

The Sixth Amendment right to counsel "is the right to effective assistance of counsel."
*McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  To prove that counsel was ineffective,
Petitioner must establish that: (1) counsel's performance was constitutionally deficient; and, (2)
that deficiency prejudiced Petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
Deficient performance "requires showing that counsel made errors so serious that he or she was
not functioning as the 'counsel guaranteed to the defendant by the Sixth Amendment.'"  *Id.*  In
essence, Petitioner must show that "counsel's representations fell below an objective standard of
reasonableness" under prevailing professional norms.  *Id.* at 688.  Petitioner must overcome the
presumption that, under the circumstances, the challenged action "might be considered sound
trial strategy."  *Id.* at 690 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Prejudice
requires showing that counsel's errors were serious enough to deprive the defendant of a fair
trial.  *Id.* at 687.

## IV.      Discussion

### A.       Petitioner's Ineffective Assistance of Counsel Claims Are Meritless

Petitioner objects to Judge Lloret's determination that Petitioner's prior counsel was not
ineffective for failing to raise every claim Petitioner allegedly wished to pursue on appeal. (ECF
No. 25-2 at 2.)  Specifically, Petitioner asserts that every claim deemed waived by the Superior
Court was one he wanted his attorney to raise on direct appeal.  (ECF No. 25-2 at 3.)  Petitioner
further objects to the Magistrate's findings that the PCRA court's rulings on ineffective
assistance of counsel were neither contrary to, nor an unreasonable application of, *Strickland*.
(ECF No. 25-2 at 9.)

When *Strickland* and § 2254(d) are applied "in tandem," their own "highly deferential" standards become "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotations and citations omitted). As a result, when reviewing a claim for ineffective assistance of counsel under the AEDPA, "federal courts are to afford both the State Court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 136 S.Ct. 1149, 1151 (2016) (internal quotations and citations omitted); *see also Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 593 (3d Cir. 2015) ("[W]e apply a 'doubly deferential standard,' both as to whether counsel's conduct was reasonable as well as to the Pennsylvania Supreme Court's treatment of the issue.") (citing *Breakiron v. Horn*, 642 F.3d 126, 141-142 (3d Cir. 2011)), *cert. denied,* 136 S. Ct. 1494, 194 L. Ed. 2d 589, 2016 U.S. LEXIS 2234, 84 U.S.L.W. 3544 (U.S. 2016).

In this case, the Superior Court noted that the following issues as raised by Petitioner constituted ineffective assistance of counsel claims:

1.  McMahon "abandoned efforts to bar a retrial on double jeopardy grounds."  (ECF No. 9-3 at 14);

2.  McMahon failed to investigate "witnesses who provided notarized affidavits or contradicting statements which could provide reasonable doubt."  (ECF No. 9-3 at 16–17);

3.  McMahon "failed to investigate DNA evidence on cigarette butts at the scene of the crime."  (ECF No. 9-3 at 18);

4.  McMahon was ineffective for "failing to argue that the [CSLI] should have been suppressed and that he had standing to seek their suppression." (ECF No. 9-3 at 18);

5.  McMahon was ineffective for "failing to insist that the prosecutor request a hearing outside of the presence of jury when Whitfield, during pre-trial proceedings before the second trial, indicating that she would consider asserting her Fifth Amendment privilege if called to testify against Morris. (ECF No. 9-3 at 21);

6.      McMahon was ineffective for recommending that Petitioner "take the position at trial that while he accompanied his two co-defendants on the night in question, he did not know or want anyone to get hurt or killed." (ECF No. 9-3 at 21);

7.      McMahon was ineffective for not objecting when the Commonwealth argued accomplice liability to the jury and for requesting a jury charge on accomplice liability.  (ECF No. 9-3 at 22); and,

8.      McMahon was ineffective for preserving just one issue (Rule 600) for appeal.  (ECF No. 9-3 at 23).

Because the Superior Court reached the merits of these claims, its rulings may only be set aside under the AEDPA if its application of the *Strickland* standard "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

This Court's independent review of the record clearly demonstrates that the Superior Court carefully and properly considered and disposed of each of these claims.  Said court's rulings did not involve a contrary or unreasonable application of the law, nor did the court unreasonably interpret the facts in light of the evidence of record.

## 1.  Double Jeopardy

Petitioner's ineffectiveness claim stemming from the double jeopardy issue was rendered meritless because a prior panel of the Superior Court had already ruled that double jeopardy did not attach in this case, therefore counsel could not be deemed ineffective for failing to raise a meritless claim.[2]  (ECF No. 9-3 at 16.)  This Court's *de novo* review bares the same result.

During opening arguments in Petitioner's first trial, then-Assistant District Attorney Kevin Steele referred to a statement that one of Petitioner's co-defendants gave to police.  Steele specifically said, "He gave a statement, gave a statement to the police.  And in that statement, he was asked whether he knew Mikey or Dinero."  (Trial Tr. 54:15–21, Jan. 12, 2006, ECF No. 9-187.)  Mr. Alva, attorney for another co-defendant, immediately objected to the statement, claiming that Mr. Steele had just committed a *Bruton* violation.  (Trial Tr. 55:19.)  Mr. Henry, Petitioner's attorney at the time, joined in the objection and moved for a mistrial.  (Trial Tr. 56:8–14.)  Mr. Steele aggressively opposed the motion, arguing the non-existence of any *Bruton* violation and therefore, no need for the court to declare a mistrial.  (Trial Tr. 110:17.)

The following day, Judge Hodgson held a hearing on whether or not to declare a mistrial.  Mr. Henry argued that there should be a mistrial, stating that a mistrial was the "only way to cure this[.]"  (Trial Tr. 9:11–12, Jan. 13, 2006, ECF No. 9-190.)  Mr. Steele argued that because the statement he referenced in his opening argument did not implicate criminal activity, there could be no *Bruton* violation.  (Trial Tr. 13:4–13.)  Judge Hodgson ultimately disagreed and issued a

---

[2] Petitioner also contends the Magistrate erred in "that there was no evidence of record to support [Petitioner's] claim of intentional misconduct by the prosecutor." (ECF No. 25-2 at 4, 12.) Petitioner's objections regarding the prosecutor's misconduct are closely tied to his double jeopardy objections, as Petitioner would be barred from re-trial on double jeopardy grounds if the prosecution intentionally provoked a mistrial.  This Court's analysis of Petitioner's objection relating to Mr. McMahon's failure to pursue an appeal based on double jeopardy reaches the merits of both objections.

ruling from the bench declaring that although Mr. Steele's statement did constitute a *Bruton* violation . . .

> [The court doesn't] attribute any evil motives or purposeful intent to prejudice the Co-Defendants by your action. Commenting on inadmissible evidence in an   excited and pointed fashion during your opening statement to the jury, the unavoidable effect is to plant a seed in the jurors' minds that all three Defendants are somehow tied together based on the evidence that the jury can never hear.

(Trial Tr. 33:10–18.)

On appeal, the Superior Court determined the statement was admissible because there was no *Bruton* violation.  However, said court further concluded that had the statement been improper, there was no evidence of intentional misconduct by the prosecutor.  (ECF No. 9-177 at 6.)  In reaching its ruling, the court specifically noted that "[f]or *Bruton*  to apply, the reference must <u>explicitly implicate</u> the non-confessing defendant."  (ECF No. 9-177 at 11 (emphasis in original)).  The record shows that the statement Mr. Steele referenced in his opening argument only indicated that one of the co-defendants could identify the other.  There was no explicit implication of criminal activity in the statement.  As such, the Superior Court's application of federal law as it existed at the time was not unreasonable.[3]

On subsequent PCRA review, the Superior Court correctly applied the ineffectiveness standard in reaching its conclusion that in light of Judge Hodgson's determination of no intentional misconduct by the prosecutor, counsel could not be deemed ineffective for failing to

---

[3] On October 19, 2016, Petitioner filed what is in essence, a Notice of Supplemental Authority. (ECF No. 34.)  The supplemental authority propounded by Petitioner—*Brown v. Superintendent Greene - SCI*, 834 F.3d 506, 522 (3d Cir. 2016)—held that a Petitioner was entitled to relief on a *Bruton* claim after the prosecutor essentially "unmasked" a co-defendant before the jury. Petitioner herein alleges the same to be true in his case.  Aside from this Court's determination that the facts of *Brown* are distinguishable from those involved herein, the state courts did not unreasonably apply "clearly established law" at the time it rendered its decisions.  *See* 28 USCS § 2254(d)(1) ("Clearly established federal law" is that which has been "determined [so] by the Supreme Court of the United States.").

raise the issue.  (ECF No. 9-3 at 16.)[4]  This Court's independent review of the record similarly demonstrates that Mr. Steele genuinely believed the statement he referenced would be admissible—the record is devoid of any evidence to indicate Mr. Steele intentionally engaged in misconduct.

Because the Superior Court found there was no *Bruton* violation or intentional misconduct, there was no basis for a double jeopardy claim.  Mr. McMahon cannot be held ineffective for failing to pursue a meritless claim.  Accordingly, Petitioner's objection is overruled.

### 2.      There Is No Evidence of Any Uncalled Witnesses

Petitioner further objects to the Magistrate's ruling regarding uncalled witnesses who could have allegedly provided exculpatory evidence.  The Superior Court rejected this claim, finding no evidence that Attorney McMahon knew of any witnesses that were available and willing to testify on Petitioner's behalf.  (ECF No. 9-3 at 17-18.)  This Court's independent review of the record yields the same result: there is no evidence that Mr. McMahon had knowledge of additional witnesses that could have provided exculpatory evidence for the defense and were not called during Petitioner's trial.  Accordingly, Petitioner's objection is overruled.

### 3.      Any Potential DNA Evidence Would Not Be Exculpatory

The Superior Court rejected Petitioner's claims of exculpatory DNA evidence and ineffectiveness arising therefrom.  (ECF No. 9-3 at 18.)  Review of the record supports this conclusion.  Officer Edward Schikel of the Philadelphia Police Department testified at trial about what he observed at the crime scene.  (Trial Tr. 114:16–17, Sept. 17, 2009, ECF  No. 9-132.)

---

[4]   Specifically, the Superior Court determined that Petitioner had not preserved his double jeopardy issue for appellate review of his collateral appeal.  (ECF 9-3 at 12 n.4.)  However, said Court did reach the ineffectiveness claim regarding double jeopardy.  (ECF No. 9-3 at 14-16.)

Officer Schikel established that police found a cigarette butt at the crime scene near Jennifer Pennington's body. (Trial Tr. 122:2–8.) This appears to be the only cigarette that was recovered from the crime scene. The record indicates that the cigarette was tested for DNA evidence, and the only DNA evidence that was identified was that of Ms. Pennington. (Trial Tr. 125:17–126:11.) If Petitioner is referring to this cigarette butt, it was tested for DNA evidence and that evidence could in no way be exculpatory. If Petitioner is referring to another piece of evidence, there is no indication in the record of its existence. Accordingly, Petitioner's objection is overruled.

### 4. Admissibility of Cell Site Location Information Was Properly Litigated

Petitioner's next objection pertains to the admissibility of Cell Site Location Information ("CSLI"). Prior to the second trial, Attorney McMahon extensively—albeit, unsuccessfully—litigated the suppression of CSLI. (ECF No. 9-113.) On appeal, the court noted that the trial court's finding that Petitioner lacked standing to challenge the CSLI due to the absence of any possessory interest, was supported by both federal and state law. (ECF No. 9-3 at 18-19.) This Court further finds the conclusion to be supported by evidence of record.

During the initial proceedings, Attorney McMahon conducted a thorough cross-examination of the Commonwealth's expert, Roger Boyell, regarding the expert's ability to accurately testify as to the CSLI. (Pre-Trial Mot. Hr'g Tr. 64:1, Aug. 26, 2009, ECF No. 9-113.) Mr. McMahon specifically questioned the witness regarding the various tests he conducted to verify the accuracy of using CSLI to track the location of a person when they make a call on a cell phone. (Pre-Trial Mot. Hr'g Tr. 87:3–91:20.) He also questioned Mr. Boyell's use of margins of error in his analyses and the lack of peer review for the methodology Mr. Boyell employed. (Pre-Trial Mot. Hr'g Tr. 97:13–105:17.) Mr. McMahon vigorously argued that the

court should exclude both Mr. Boyell's testimony and the CSLI.  Though he was ultimately unsuccessful, it cannot be said that counsel's performance was constitutionally deficient. Accordingly, Petitioner's objection is overruled.

### 5.    Petitioner's Confrontation Rights Were Not Violated

Petitioner next argues that the state courts' application of federal law with regard to Saleema Whitfield's decision to testify was erroneous.  On collateral appeal, the Superior Court rendered Petitioner's ineffectiveness claim on the basis of his Confrontation Clause issue relating to Ms. Whitfield moot, as she testified at trial and did not invoke her Fifth Amendment right against self-incrimination.  (ECF No. 9-1 at 21.)  The record supports this conclusion. Regardless of whether or not Whitfield had at any point indicated she was considering invoking her Fifth Amendment right against self-incrimination, she did not do so.  (Trial Tr. 185:17 – 199:15, Sept. 16, 2009, ECF No. 9-134.)  Accordingly, Petitioner's objection is overruled.

### 6.    Attorney McMahon's Strategy Regarding How He Would Portray Petitioner's Involvement Did Not Result in Prejudice

Next, Petitioner objects to the rejection of his claim that Attorney McMahon's trial strategy regarding accomplice/principal actor constituted ineffective assistance of counsel.  On collateral appeal , the Superior Court dismissed Petitioner's claim that Mr. McMahon was ineffective for arguing that while Petitioner "accompanied his two co-defendants on the night in question (as their driver), he did not know or want anyone to get hurt or killed."  (ECF No. 9-3 at 21.)  The Superior Court determined that Petitioner provided no evidence that he suffered prejudice and that he failed to identify "any evidence or alternative strategy that counsel could have utilized that would have resulted in a reasonable probability that the result of trial would have been different."  (ECF No. 9-3 at 22.)

The record supports the conclusion of the Superior Court.  At no point, in any of Petitioner's voluminous correspondence with various courts, has Petitioner specifically articulated how or why he was prejudiced by Mr. McMahon's trial strategy.  In fact, this strategy may very well have been the reason Petitioner's jury was unable to come to a unanimous decision on whether to impose the death penalty.  (Penalty Phase Tr. 9:9-16, Oct. 19, 2009, ECF No. 9-108.)  Accordingly, Petitioner's objection is overruled.

### 7.   Accomplice Liability Charge Was Appropriate

Petitioner next takes issue with the Magistrate's finding regarding the accomplice liability instruction utilized at trial.  In assessing this claim on collateral review, the Superior Court noted that Petitioner's ineffectiveness claims relating to the jury charge on accomplice liability were meritless.  (ECF No. 9-3 at 22.)   Petitioner's objection appears to allege that Mr. McMahon's treatment of the accomplice liability issue significantly lowered the Commonwealth's burden of proof.  However,  review of the record clearly belies Petitioner's claim.

Accomplice liability was a central element of the prosecution's case-in-chief.  During his opening argument, Assistant District Attorney McGoldrick explicitly told the jury the Commonwealth would prove that Petitioner was an accomplice in the burglary of Room 123 at the Best Western Motel that led to the murder of Shawne Mims.  (Trial Tr. 74:14–75:14, Aug. 27, 2009, ECF No. 9-113.)  In fact, Mr. McGoldrick explained the theory of accomplice liability to the jury and how the Commonwealth would use it to prove Petitioner's guilt.  (Trial Tr. 41:22–42:9.)  The Commonwealth was actively pursuing a conviction through the theory of accomplice liability.  The argument that Mr. McMahon somehow wronged Petitioner by

introducing the theory on his own through an inappropriate jury instruction request is simply not supported by the record.  Petitioner's objection is overruled.

### 8.   Non-Existence of Meritorious Issues for Presentation on Appeal

Petitioner further objects to the Magistrate's finding regarding counsel's decision to forego the presentation of certain issues on appeal.  In its opinion regarding Petitioner's PCRA appeal, the Superior Court noted that Mr. McMahon was not ineffective in this regard.  (ECF No. 9-3 at 23.)  Based on the record before it, the court determined that aside from the Rule 600 issue Mr. McMahon pursued on behalf of Petitioner, there were no other meritorious issues to raise on appeal.  (ECF No. 9-3 at 23.)  This Court's independent review of the record similarly demonstrates that there were no additional meritorious issues that Mr. McMahon could have pursued on appeal – as evidenced in part by the discussion set forth herein throughout.[5] Accordingly, the Magistrate's conclusion regarding same was proper and Petitioner's objection is overruled.

---

[3]Although not dispositive of the issue, Petitioner's appointed PCRA counsel, Karen Lee DeMerlis, reached the same conclusion after reviewing Petitioner's entire case.  Attorney DeMerlis filed an extensive brief with Judge O'Neill, in which she addressed each of the numerous issues Petitioner sought to pursue at that time and explained why they were without merit.   (ECF No. 9-41.)

### B.      Remaining Claims of Error

### 1.      Inculpatory Evidence Does Not Constitute *Brady* Material

Next, Petitioner claims the Magistrate Judge's finding that there was no *Brady*[6] violation

by the prosecutor during trial was erroneous. (ECF No. 25-2 at 3.) Petitioner also objects to the

Magistrate Judge's finding that this issue could have been, but was not, raised on direct appeal.

(ECF No. 25-2 at 5.)

Petitioner first raised this issue in his PCRA petition.  In evaluating same, the Superior

Court noted that because Petitioner did not raise this issue on direct appeal, it was waived.  (ECF

No. 9-3 at 12-13.)  Under the AEDPA, this claim was not exhausted because it was not raised on

direct appeal in keeping with the requirements of 28 U.S.C. 2254(b)(1).

Even if the claim had been exhausted and was properly before this Court, it is without

merit.  The Third Circuit has held that there are three elements a defendant must prove to

demonstrate a *Brady* violation:

> First, the evidence "must be favorable to the accused, either because it is
> exculpatory, or because it is impeaching." [*Strickler v. Greene*, 527 U.S.
> 263, 281–82 (1999)]; *see also United States v. Bagley*, 473 U.S. 667,
> 676 (1985) ("Impeachment evidence . . ., as well as exculpatory evidence,
> falls within the *Brady* rule.")  Second, it "must have been suppressed by
> the State, either willfully or inadvertently."  *Strickler*, 527 U.S. at 282.
> Third, the evidence must have been material such that prejudice resulted
> from its suppression.  *Id.; see also* [*Banks v. Dretke*, 540 U.S. 668,
> 691(2004)].  The "touchstone of materiality is a 'reasonable probability'
> of a different result."  [*Kyles v. Whitley*, 514 U.S. 419, 434 (1995)].
> Materiality "does not require demonstration by a preponderance that
> disclosure of the of the suppressed evidence would have resulted
> ultimately in the defendant's acquittal . . . . [Rather], [a] 'reasonable
> probability' of a different result is . . . shown when the government's
> evidentiary suppression undermines confidence in the outcome of the
> trial."  *Id.*  (internal quotation marks omitted).

*Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 284–85 (3d Cir. 2016).

---

[6] *Brady v. Maryland*, 373 US 83 (1963).

Petitioner cannot meet any of the three elements necessary to demonstrate a *Brady* violation.  First, the record shows that the evidence Petitioner refers to is inculpatory, rather than exculpatory. The CSLI places Petitioner directly at the scene of the murders.  The Commonwealth's expert, Mr. Boyell, testified regarding Petitioner's location when he made phone calls using Saleema Whitfield's phone on the evening of the murders.  (Trial Tr. 140:19 – 141:2, Sept. 28, 2009, ECF No. 9-130.)  Officer Nilsen then provided testimony that linked the CSLI Mr. Boyell described to the location of Jennifer Pennington's body.  (Trial Tr. 175:17–22.)  Officer Nilsen further testified that according to the CSLI, Petitioner was at the Best Western when Shawne Mims was killed.  (Trial Tr. 176:18–21.)  It is unfathomable that this evidence could somehow be used in an exculpatory manner.  Second, the prosecution did not suppress this evidence. In fact, the record shows that Petitioner had this evidence more than one year prior to his second trial.  (Pre-Trial Hr'g Tr. 43:11-17, Apr. 29, 2008, ECF No. 9-167.)  Because there was no suppression, Petitioner cannot meet the third element, which requires Petitioner to demonstrate that prejudice resulted from the suppression of evidence.

Petitioner's *Brady* argument not only fails because the claim was not exhausted, but also because there is no merit to same.  Accordingly, his objection is overruled.

### 2.       There Is No Evidence of False Testimony

Petitioner's next objection pertains to the Magistrate Judge's finding regarding his clams that the prosecutor intentionally presented false testimony.  (ECF No. 25-2 at 17.)    Specifically, Petitioner alleges that witnesses who testified altered their testimony to eliminate Petitioner's co-defendant as the principle actor and falsely claimed they observed Petitioner with a gun on the evening of the murders.  (ECF No. 25-2 at 17.)  The Superior Court noted this issue was not

raised on direct appeal, therefore it was unexhausted and procedurally defaulted.  (ECF No. 9-3 at 12.)

On habeas review, the Magistrate similarly concluded that the claim had not been exhausted.  This Court agrees.  Moreover, *de novo* review of the claim renders same meritless.

As Magistrate Judge Lloret correctly noted in his R&R, there is ample evidence in the record which demonstrates Petitioner had a gun.  Jacqueline Clemens specifically testified that when Petitioner came to her home on the evening the murders took place, she saw the top half of a gun "in the [Petitioner's] jeans."  (Trial Tr. 86:18 – 87:4, Sept. 16, 2009, ECF No. 9-134.) Additionally, Ms. Clemens identified an AK-47 on the table next to Petitioner.  (Trial Tr. 86:18 – 87:4.)  Witness Kathleen Somers testified that Petitioner had a gun on him when she saw him that same evening. (Trial Tr. 155:20–23.)  In particular, Ms. Somers stated that when she opened her bedroom door, she saw Petitioner in possession of a "chrome" gun, questioning Kristin Holmes on her bed.  (Trial Tr. 156:15–57:11.)  This testimony is clear, and any potentially inconsistent testimony regarding possession of a gun by Petitioner's co-defendants would not change the fact that prosecutors clearly established Petitioner was in possession of a gun on the night of the murders.  Furthermore, Petitioner presents no evidence which demonstrates prosecutors knowingly permitted the presentation of false testimony.

Accordingly, Petitioner's objection regarding this issue is overruled.

### 3.    Petitioner Validly Waived His Rights to a Speedy Trial

Petitioner further objects to the Magistrate's finding that the waiver of Petitioner's speedy trial rights was knowing and voluntary. (ECF No. 25-2 at 6.)  Specifically, Petitioner contends the Magistrate Judge did not appreciate the "amount of duress" placed upon Petitioner when he

decided to forego his speedy trial rights and pursue an appeal to the Pennsylvania Supreme Court. (ECF No. 25-2 at 6.)

The Superior Court reached this issue on the merits.  In doing so, it noted that Petitioner would have had his trial within the 120-day period, had he not chosen to file an appeal with the Pennsylvania Supreme Court.  (ECF No. 9-99 at 4-5.)  The Superior Court therefore concluded that "because [Petitioner] sought review in the Supreme Court necessarily delaying trial, and because it was this delay that pushed the trial date past the 120-day period noted in Rule 600, he cannot now complain that his rights to a speedy trial were violated."  (ECF No. 9-99 at 6.)

A review of the record clearly supports this finding.  The transcript of the pre-trial hearing conducted by Judge Richard Hodgson demonstrates that the court went to great lengths to ensure Petitioner understood what his options were and what would happen if he chose to file a *nunc pro tunc* petition for allowance of appeal.

In particular, Judge Hodgson explained to Petitioner:

> So the Commonwealth is doing everything within its power to make sure that it doesn't lose that chance of trying you within those 120 days.  So everything that will occur from here on out will be your decision, under affirmation, on the record, with all of your questions answered, because if you make this decision to refile your *nunc pro tunc*, you're no worse off. You'll  eventually - - if they say, no, you can't do it, the Supreme Court says, too late, not [a] good reason, I don't care whether you - - I don't know what they'll say, if they say that, you're no worse off than you are here today.  The Commonwealth still has to try you.  They have to do everything, except for the fact you can't come in then and say, they were supposed to try me within 120 days.

(Pre-Trial Hr'g, 33:11–34:2;, April 29, 2008, ECF No. 9-167 at 34-35.)

In response, Petitioner affirmed that he understood his rights.  (Pre-Trial Hr'g, 40:16; 43:18-20; 50:10-25, 51:1-13; 53:6-8; 60:9-21 ; 66:2-11, April 29, 2008, ECF No. 9-167 at 41, 44, 51-52; 54, 61, 67.)   The record demonstrates that Petitioner was well-versed in the procedural

stature of his case and there is absolutely no indication that he was proceeding under duress. Instead, Petitioner freely and knowingly waived his right to a speedy trial.  Accordingly, Petitioner's objection is overruled.

### 4.      Representation by Attorney Gregory Pagano Was Harmless

Petitioner objects to the Magistrate's finding that the trial court did not commit reversible error by allowing Attorney Gregory Pagano to represent Petitioner for the sole purpose of filing a Notice of Appeal, *nunc pro tunc*.   (ECF No. 25-2 at 6.)  This objection is premised on the fact that at the time Mr. Pagano was appointed for this purpose, he had not yet satisfied the requirements articulated by Rule 801 of the Pennsylvania Rules of Criminal Procedure regarding the representation of defendants in capital homicide cases.[7]

In reaching the merits of this issue, the Superior Court noted that a Comment to Rule 801 suggests the requirements of the rule "may not be waived ***by the trial or appellate court***."  (ECF No. 9-99 at 9) (emphasis added).  Despite this Comment, the court concluded  that "any error the trial court committed in permitting Mr. Pagano to represent [Petitioner] prior to trial was harmless." (ECF No. 9-99 at 9.)[8]  In doing so, the appellate court placed great weight on the fact that during his actual trial, Petitioner was represented by Mr. McMahon, an attorney who was fully compliant with Rule 801.  Said court further noted that Petitioner's suggestion that he was placed under duress and only pursued his appeal so that he could obtain a Rule 801 compliant attorney was "specious" and that the issue only existed in hindsight.  (ECF No. 9-99 at 9–10.)

---

[7] Rule 801 provides in relevant part that "[i]n all cases in which the district attorney has filed a Notice of Aggravating Circumstances pursuant to Rule 802, before an attorney may participate in the case either as retained or appointed counsel, the attorney must meet the education and experiential criteria set forth in this rule."  Pa.R.Crim.P. 801.

[8]  This Court further notes that is was Petitioner's family who first retained Mr. Pagano on their own before the issue of appointment by the court ever arose.

They found the same to be true of Petitioner's assertion of prejudice therefrom.  (ECF No. 9-99 at 10.)

This Court's *de novo* review of the record bares the same result. An extensive exchange by and between the court, counsel and Petitioner regarding his wish to pursue an appeal clearly shows Petitioner had "no objection to the court granting [the request], and immediately appointing [Petitioner] counsel."  (Pre-Trial Hr'g, Tr. 64:10-13, ECF No. 9-167 at 65.)  More specifically, Petitioner agreed to permit Mr. Pagano to file a Notice of Appeal *nunc pro tunc* and then immediately withdraw from the case so that "death-qualified" counsel could be appointed forthwith.  (Pre-Trial Hr'g, Tr. 64:14-25, 65:2-24 , ECF No. 9-167 at 65-66.)  The record similarly confirms that during his trial, Petitioner was represented by Mr. McMahon, who was qualified under Rule 801.

Accordingly, the Petitioner's objection is overruled.

### 5.   Petitioner's Cumulative Prejudice Claim Is Without Merit

Finally, Petitioner objects to the Magistrate Judge's finding that Petitioner's cumulative prejudice claim is unexhausted and procedurally defaulted.  (ECF No. 25-2 at 16–17.)  Although the Magistrate Judge correctly noted that a claim of cumulative error "must be presented to the state courts before it may provide a basis for habeas relief," this Court cannot conclude that Petitioner did not exhaust the claim at the state court level. (R&R 23-24 (citing *Collins v. Pennsylvania Dept. of Corr.*, 742 F.3d 528, 543 (3d Cir. 2014).)

On March 5, 2014—after having filed an appeal in the Pennsylvania Superior Court— Petitioner filed a Motion to Supplement [Appellant's] Brief with the Montgomery County Court of Common Pleas.  (ECF No. 9-10.)  In said Motion, Petitioner cited to a recent holding he discovered regarding cumulative error.  (ECF No. 9-10 at 2.)  On April 30, 2014, the

Pennsylvania Superior Court granted Petitioner's Motion and directed the Prothonotary for the Montgomery County Court of Common Pleas to forward Petitioner's supplemental materials to them.  (ECF No. 9-3 at 29.)  However, when the Superior Court issued its Opinion affirming the PCRA Court's ruling on October 10, 2014, there was no mention of the cumulative error issue.  (ECF No. 9-3.)  Petitioner sought allocator and the Pennsylvania Supreme Court denied same on February 4, 2015.  (ECF. Nos. 9-2, 9-4.)   As such, there was nothing else Petitioner could do to exhaust this claim at the state court level.

However, even assuming the cumulative error claim does warrant further review, it is without merit.  The doctrine of cumulative error "allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process.  *Collins*, 742 F.3d at 542 (citing *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007)).  Each claim Petitioner has made with regard to alleged trial errors has been repeatedly rendered meritless.  Because the individual errors alleged by Petitioner are without merit, there can be no cumulative error that undermined the verdict to the degree that Petitioner was denied his constitutional right to due process.

Therefore, although the Magistrate's finding that the claim was unexhausted and procedurally defaulted appears to be erroneous, Petitioner's cumulative prejudice claim is without merit.  Accordingly, his objection is overruled.

**V.      Conclusion**

For the reasons set forth hereinabove, Plaintiff's Objections to the Magistrate's R&R shall be overruled and the R&R shall be adopted and approved.  For these same reasons, Petitioner is not entitled to a hearing.

An appropriate Order follows.


BY THE COURT:


/s/  C. Darnell Jones, II    J.